27 N.Y.2d 339 (1971)
In the Matter of The Estate of James H. Crea, Deceased. Catherine C. Cornelius, Coexecutor of James H. Crea, Deceased, Appellant; James T. Crea, Coexecutor of James H. Crea, Deceased, Respondent.
Court of Appeals of the State of New York.
Argued November 11, 1970.
Decided January 6, 1971.
William C. Farner for appellant.
Edward W. Kinney for respondent.
Judges BURKE, BREITEL and JASEN concur with Judge SCILEPPI; Judge BERGAN dissents and votes to affirm in a separate opinion in which Chief Judge FULD and Judge GIBSON concur.
*341 SCILEPPI, J.
We are called upon to determine whether certain transactions between testator and his son resulted in and remained an enforceable obligation which should have been included as an asset of the testator's estate.
On August 4, 1963 James H. Crea died testate leaving a will dated July 20, 1962 which has been duly probated and in which he bequeathed $20,000 to his daughter, the appellant, and gave certain engineering and contracting equipment to his son, James T. Crea, respondent herein. Both were also made residuary legatees[1] and coexecutors of the estate.
Turning to the particular transactions in question, it appears that in 1954 and 1955, respondent and his wife constructed a residence on certain vacant property which they had previously acquired. Labor, materials and money for this building were furnished by the Crea Construction Company, a partnership comprised of testator and his wife (who predeceased him). Appellant alleges that, as a result of this construction, respondent became indebted to his father in the sum of $19,290.70, an obligation which he has refused to pay.
Thereafter, in 1955, respondent surrendered to his parents his document of title[2] to the aforesaid property so as to allow them to effectuate a sale to secure revenue needed for the operation of the construction business. Testator in exchange gave his son a receipt in his own handwriting which read as follows:

*342 November 17, 1955
We have this day received from JAS. T. and NORMA L. CREA Deed, Title Search and Survey as payment in full for money due on house and property at No. 8 Kirkwood Drive, Grand Island, Erie County, New York.
 Signed,
 CREA CONSTRUCTION
 By: J.T. CREA
 ELLA P. CREA
In our opinion, this receipt in no way extinguished the debt since when no sale was effectuated, the documents were returned to respondent who thereafter orally agreed to pay testator installments of $75 (later raised to $90) per month for the rest of testator's life on the aforesaid obligation. Pursuant to this agreement respondent made payments until shortly after the death of testator. It is significant, however, that these monthly payments appear to have been treated by the testator as interest since the full sum of $19,290.70 was carried on the books of the Crea Company as an account receivable until 1963. Moreover, the record reveals that respondent, acting in his capacity as executor also treated the debt as an asset of the estate and paid Federal and State estate taxes on that asset. When respondent filed his petition for a judicial settlement of his accounts, he failed to list the $19,290.70 obligation as an asset of the estate and appellant thereupon filed her objections. Appellant argues that the transactions between respondent and testator for building materials resulted in and remained an enforceable obligation which should have been included by respondent as an asset of the estate.
The courts below employed different rationales in their rejection of appellant's claim. The Surrogate, holding that the alleged debt was not an asset of the estate, wrote that: "Inasmuch as there was never any writing or memorandum evidencing a debt, and also that there was never any demand made, the evidence is insufficient to prove that the amount in question constituted an enforceable debt owing from the son to the decedent. Section 31, Personal Property Law [Statute of Frauds]." We are unable to see how that particular section of the Statute of Frauds applied to the transactions in question. Certainly, the *343 debt could have been paid within one year and there is no indication in the record that this was a contract to make a testamentary disposition. Moreover, contrary to the view of the Surrogate, there was testimonial evidence and as we have indicated documentary evidence (i.e., the books of the Crea Company and tax returns) which strongly tend to establish her claim.
Although on appeal the Appellate Division reached the same result as the Surrogate, it took the view that the transaction between father and son was a sale of goods and reasoned that the complete delivery and acceptance of the materials supplied took the transaction out of what it considered the applicable Statute of Frauds (to wit, Personal Property Law, former § 85 [Sale of Goods]). It concluded, however, that the subsequent oral agreement for monthly payments was a modification of the contract which effectively terminated respondent's liability on the death of the testator (33 A D 2d 887). While we agree that the transfer of building materials was a sale of goods and that delivery and acceptance took it out of the Statute of Frauds, we cannot accept the conclusion of the Appellate Division that the subsequent oral modification was effective to defeat appellant's claim. Problems of the Statute of Frauds aside, that oral modification was invalid because it was not supported by consideration[3] required by former section 33 (subd. 2) of the Personal Property Law (now General Obligations Law, § 5-1103) which provided that: "§ 33. Validity of certain agreements made without consideration. * * * 2. An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration, provided that the agreement changing, modifying or discharging such contract, obligation, lease, mortgage or security interest, shall be in writing and signed by the party against whom it is sought to enforce the change, modification or discharge, or by his agent." It is apparent that the courts below seem to have been influenced by the notion that the outright cash bequest to appellant was intended *344 to place her on a parity with her brother who had received nearly $20,000 worth of building equipment and materials during their father's life. While we agree that this consideration might defeat appellant's moral right to her share as residuary legatee, we are constrained by former section 33 (subd. 2) of the Personal Property Law to hold that the $19,290.70 debt was an enforceable obligation which should have been included as an asset of the estate.
Appellant also urges that she is entitled to interest on her cash legacy because it was not paid until nearly three years after letters testamentary were issued. The Surrogate denied interest on the ground that appellant, as coexecutor, was equally at fault with her brother for the delay in paying the bequest. The Appellate Division, however, modified the decree holding that under section 218 of the Surrogate's Court Act appellant was entitled to interest at the rate of 3% per annum. We agree. Though section 218 vested the Surrogate with the discretion to determine the reasonableness of the delay as a factor in considering whether or not the legatee was entitled to 6% interest, the statute specifically provided for the imposition of 3% interest where the legacy is not paid seven months from the issuance of letters testamentary. Thus, it was entirely proper for the Appellate Division to allow 3% interest from March 15, 1964 (seven months from the issuance of letters) to December 19, 1966, the date when the legacy was paid (see Matter of Hallock, 308 N.Y. 299).
Accordingly, the order appealed from should be reversed, without costs and the matter remanded to the Surrogate's Court for the inclusion of respondent's $19,290.70 obligation as an asset of the estate.
BERGAN, J. (dissenting).
In reaching a rather unjust result in this case, the court also misapplies the statute (Personal Property Law, former § 33, subd. 2, now General Obligations Law, § 5-1103). That statute provides that an agreement to "discharge" an obligation "shall not be invalid" because of absence of consideration if the agreement is in writing signed by the party to whom the obligation is owing.
The "obligation" here is $19,290.70 which the son owed to the father-testator's partnership, or for practical purposes, to the father and mother. That obligation was in plain words and *345 unequivocally discharged by the written instrument of November 17, 1955 in literal accordance with the statute, i.e., "we have * * * received * * * payment in full for money due on house and property".
It was signed conformably with the statute by the partnership, by the father and by the mother, and it seems indisputable that thereupon the pre-existing obligation became no longer enforceable as a matter of law. It was in express language discharged.
The only purpose of the statute is to make valid such an agreement to discharge an obligation if it is stated in writing and signed, even though there is in fact no consideration for the discharge. (Radist v. Zidel, 12 A D 2d 648.) In this respect it changed the common-law rule. Therefore, without any consideration, the execution of the instrument of November 17, 1955 discharged and terminated the prior indebtedness.
Even if consideration were required for such an agreement not under seal, as it would have been at common law, there is here a sufficient consideration recited. It is not open to doubt that the formal physical delivery and acceptance of a title deed to land is a good consideration for a contract even if more is left to be done to perfect a symbolic transfer. Whether there was good consideration or not, however, the former obligation as it existed on November 17, 1955 was wiped out in exactly the way the statute provides.
The testator and his son thereafter made new informal arrangements  in effect to reconstitute the discharged debt, in part, by the payment of installments during the remainder of the father's life. This was not the reinstatement of the same obligation that had been discharged. That former and discharged obligation to pay for goods was unconditional. The new agreement was plainly an oral novation between the parties different in the depth and extent of obligation from the former debt.
The majority opinion here expresses the view that because of the novation, which is concededly different from the original debt, the writing of November 17, 1955 did not extinguish the debt. This view runs against the plain terms of the instrument itself and the effect given to such an instrument by the statute. The later return of the deed and other documents was plainly part of the novation with which the son complied.
*346 The fact the son as executor treated the debt for tax purposes as surviving the testator's death is not a conclusive admission against him. The findings of both courts on this factual issue have been in his favor and are not open here. The loose procedure followed in this case would require caution in giving adverse effect as an admission to any formal position taken in the case under the management of counsel, even if the question of fact of the effect of admission were open here, which it is not.
If there is one thing clear in this jumbled record, it is that the father wished to treat his son and daughter on a parity. There is clear proof from disinterested witnesses (e.g., his book-keeper for many years) which has been accepted, that the testator regarded the discharge of the debt of the son and the $20,000 given to the daughter in the will as roughly equivalent.
The result of the decision now being made is that the daughter gets three fourths of the estate and the son one fourth. The majority opinion concedes that the daughter's "moral right" is weak. Her legal right is as weak as her moral right.
The order should be affirmed.
Order reversed, without costs, and matter remitted to the Surrogate's Court for further proceedings in accordance with the opinion herein.
NOTES
[1] The will further provided that respondent's residuary share should include the engineering and contracting equipment bequeathed to him.
[2] These were original documents. No new deed was executed and neither testator nor his wife took title to the property.
[3] Of course, we would reach a different result if the transactions in this case had occurred after September 27, 1964, since under section 2-209 (subd. [1]) of the Uniform Commercial Code an oral modification of a contract for the sale of goods no longer needs consideration.